CAFE 207, INC., Plaintiff,

v.

ST. JOHNS COUNTY, Defendant.

No. 92–390 CIV–J–10.

United States District Court,
M.D. Florida,
Jacksonville Division.

June 23, 1994.

Gary S. Edinger, Hankin, Beverly & Edinger, P.A., Gainesville, FL, for plaintiff.

James G. Sisco, St. Johns County Attys. Office, St. Augustine, FL, for defendant.

## MEMORANDUM OPINION

HODGES, District Judge.

This is an action for declaratory and injunctive relief in which the Plaintiff challenges the constitutionality of the St. Johns County Public Nudity Ordinance. There is no dispute concerning the court's jurisdiction over the parties or the subject matter. The case is before the court on the parties' cross motions for summary judgment. The ordinance is constitutional and the Defendant's motion for summary judgment will be Granted.

In February, 1992, the Plaintiff opened and began operating a restaurant in St. Johns County, Florida, known as the Cafe Erotica. The restaurant provides nude entertainment by live dancers in conjunction with the sale of food. No alcoholic beverages are served. The Plaintiff alleges that the nude dancing performed for its patrons is non-obscene, constitutionally protected communication; that the nude human body is a thing of beauty which, when combined with music and rhythmic motion in the form of dance, conveys an "important message of eroticism." The Plaintiff also claims that its promotion of nude dance and eroticism is, in part, a deliberate and intentional political protest against those who would choose to impose their narrow view of morality through legislation.

On April 21, 1992, St. Johns County passed its Ordinance 92–12 entitled the St. Johns County Public Nudity Ordinance. The legislation recites, among many other findings, that St. Johns County is essentially a rural-suburban community, the largest municipality of which is the City of St. Augustine which has a population of less than 13,000 people. It further recites that the County desires to preserve its unique character as a family oriented, historic attraction for tourists, and that nudity in public places is still subject to general societal disapproval by the people of the county. The core of Ordinance 92–12 is Section 6:

> Section 6. *Nudity Prohibited in Public Places.* It shall be unlawful for any person to knowingly, intentionally, or recklessly appear or cause another person to appear, nude in a public place or in any other place which is readily visible to the public ...

The definition of a "public place" includes business or commercial establishments such as restaurants, and the parties agree that the ordinance clearly covers the Plaintiff's Cafe Erotica. Violation of the ordinance is a misdemeanor offense punishable by imprisonment in the county jail for not more than 60 days, a fine of not more than $500, or both.

One distinctive feature of the ordinance is its definition of the terms "breast," "buttocks," and "nudity." In net effect, a female is "nude" whenever more than two-thirds of the buttocks or more than three-fourths of the breasts are exposed; and detailed definitions of those body parts are provided to facilitate making the fractional measurements necessary in applying the ordinance to any given state of dress (or undress, as the case may be).

The Plaintiff instituted this action on April 22, 1992, the day after the ordinance was passed by St. Johns County. The complaint alleges that Ordinance 92–12 violates the Plaintiff's right to freedom of speech under the First and Fourteenth Amendments to the Constitution of the United States.

### I

Following a hearing conducted at the outset of the litigation, I denied the Plaintiff's application for a preliminary injunction, finding, in light of the Supreme Court's landmark decision in *Barnes v. Glen Theater, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), upholding a similar anti-nudity law, that the Plaintiff had failed to demonstrate a substantial likelihood of success on the merits. The Court of Appeals affirmed, *Cafe 207, Inc. v. St. Johns County,* 989 F.2d 1136 (11th Cir.1993), making it clear, however, that the court was not deciding the merits of the constitutional issue, only that there was no abuse of discretion in my denial of preliminary injunctive relief.

█ In denying a preliminary injunction I analyzed the challenged ordinance under *Barnes,* as it teaches, by applying *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673,

20 L.Ed.2d 672 (1968), and the four-part test established in that case for determining the constitutionality of restrictions on symbolic speech or expressive conduct. In *O'Brien* the Supreme Court said that when speech and non-speech elements are contained in the same course of conduct (O'Brien had burned his draft card as an act of political protest in the presence of a sizable crowd) a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms. Statutory regulation of such expressive conduct is constitutionally valid, therefore, if the enactment is: (1) within the constitutional power of the government; (2) furthers an important or substantial governmental interest; (3) such governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

■ Five of the Justices in *Barnes* had no difficulty in finding that a public indecency statute is within the constitutional power of the State.[1] Indeed, Justice Scalia concurred in the judgment on the basis that a law regulating conduct, and not specifically directed at expression, is not subject to First Amendment scrutiny at all. The only difference between the plurality and Justice Souter related to identification of the substantial governmental interest served by the anti-nudity proscription.[2] The plurality found such interest to be the protection of order and morality, tracing the history and purpose

of such laws to the ancient common law. Justice Souter, on the other hand, believed the governmental interest served by the statute to be "the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by respondents' establishments." 501 U.S. at 580–583, 111 S.Ct. at 2468–2469.[3] See also, *International Eateries of America, Inc. v. Broward County,* 941 F.2d 1157 (11th Cir.1991).

■ Thus far in the analysis, therefore, applying *Barnes* to the facts of this case, it is clear that the first three elements of the *O'Brien* four-part test are satisfied by Ordinance 92–12. The law, as an exercise of the County's police power, is clearly within its constitutional authority. It also serves a substantial and important governmental interest in protecting order and morality *and* in combating the secondary effects of nudity in adult entertainment establishments of the sort typified by the Plaintiff's Cafe Erotica. And, neither of those governmental interests is related to the suppression of free expression as such.

■ The Plaintiff vigorously argues that a trial is necessary to explore and decide fact issues relating to the individual motivations of the County Commissioners in enacting the ordinance, and whether there are, in actuality, any adverse secondary effects of adult entertainment establishments. It is claimed, with respect to the individual purposes of the commissioners, that the ordinance was really aimed at the Plaintiff, and the Plaintiff alone,

1. The plurality opinion was written by the Chief Justice, joined by Justices O'Connor and Kennedy. Justices Scalia and Souter each wrote separate opinions concurring in the judgment.

2. Unlike the detailed findings of fact contained within Ordinance 92–12 of St. Johns County, the Indiana statute at issue in *Barnes* contained no such findings and was not accompanied by any legislative history.

3. Interestingly, and of pertinence to the Plaintiff's arguments in this case, Justice Souter made the following observations concerning his perceived justification for the statute (Id. at 2469):

This asserted justification for the statute may not be ignored merely because it is unclear to what extent this purpose motivated the Indiana Legislature in enacting the statute. Our ap-

propriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional.

It does not matter, therefore, as Plaintiff alleges, that Ordinance 92–12 was specifically aimed by its proponents at Plaintiff's business. It is, on its face, a law of general application to all nudity in public places and the fact—if it is a fact—that the Plaintiff's activities prompted its passage is of no constitutional significance. *Falls v. Town of Dyer, Indiana,* 875 F.2d 146 (7th Cir.1989), cited by Plaintiff in this context is clearly distinguishable. There the claim was selective *enforcement* of an ordinance of general application.

so that it should be analyzed not as a law of general application primarily restricting conduct, not speech, but as a specific prior restraint on the Plaintiff's free speech activity requiring, at the least, a compelling public interest. Such an inquiry, however, is clearly (and wisely)[4] foreclosed by the Supreme Court's decision in *O'Brien.*

It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. . . .

\*     \*     \*     \*     \*     \*

What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. 391 U.S. at 383–384, 88 S.Ct. at 1683 . . .

See also, *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986), and the opinion of Justice Souter in *Barnes* quoted in footnote 3, *supra.*

■ Evidence about secondary effects or, rather, the lack of them, is also clearly foreclosed. It is now established as a matter of law by Supreme Court jurisprudence culminating in *Barnes,* that secondary effects of proscribed conduct may be taken into consideration by a court in evaluating the governmental interests justifying impingement upon free speech rights even when, as in *Barnes,* there is no legislative history demonstrating that the lawmakers actually considered secondary effects or any other specific factor (such as protecting order and morality) in enacting the challenged law. See also *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (lawmakers may rely as St. Johns County did

here, upon studies conducted by other similar bodies in determining the secondary effects of adult theaters).

■ The lone remaining *O'Brien* test, then, is whether the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the governmental interests served by the ordinance. On this point in *Barnes,* the plurality opinion said (501 U.S. at 570, 111 S.Ct. at 2463):

It is without cavil that the public indecency statute is 'narrowly tailored;' Indiana's requirement that the dancers wear at least pasties and a G-string is modest, and the bare minimum necessary to achieve the state's purpose.

Justice Souter said essentially the same thing (Id., 501 U.S. at 586, 111 S.Ct. at 2471):

The fourth *O'Brien* condition, that the restriction be no greater than essential to further the governmental interest, requires little discussion. Pasties and a G-string moderate the expression to some degree, to be sure, but only to a degree. Dropping the final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message.

■ In this case St. Johns County was not content with a law such as Indiana's in which pasties and a G-string are sufficient to separate a state of lawful dress from a state of unlawful nudity. Rather, the County's ordinance requires slightly, but only slightly, more body covering than the Indiana statute validated in *Barnes.* The Plaintiff argues, however, that precisely because the Court in *Barnes* approved a regulatory statute which was satisfied by the wearing of pasties and a G-string, the requirement of those articles of clothing is the *only* dress requirement that

---

4. To permit legislators—or those, like county commissioners, exercising legislative authority—to be subject in litigation to examination about their individual motives in voting or not voting for particular measures would pose serious constitutional questions concerning separation of powers and would undermine the policy considerations supporting the doctrine of legislative privilege and immunity. *Palmer v. Thompson,* 403 U.S. 217, 225–226, 91 S.Ct. 1940, 1944, 29 L.Ed.2d 438 (1971), and *Village of Arlington*

*Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 268, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977). Cases such as *Church of Scientology v. City of Clearwater,* 2 F.3d 1514 (11th Cir.1993) and *Jager v. Douglas County School District,* 862 F.2d 824 (11th Cir. 1989), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), which do examine legislative motivation, were decided under the Establishment Clause of the First Amendment, and are clearly distinguishable for that reason.

can constitutionally be imposed on expressive dancing. This, I believe, is a misreading of *Barnes*. All the court said in *Barnes,* in both the plurality opinion and in the opinion of Justice Souter, was that an anti-nudity law which is satisfied by the wearing of pasties and a G-string constituted a minimal intrusion on the expressive content of dancing and was the minimum requirement necessary to achieve the state's purpose. This is nothing more, after all, than a practical recognition that there *are* no articles of clothing having less dimension than pasties and a G-string, and this implicit observation does not constitute a holding that pasties and a G-string are also the *maximum* requirements of dress that an anti-nudity ordinance may impose. The Court simply did not reach and did not decide that issue. It was not presented by *Barnes;* and, in my view, is not presented by this case either. Besides, this interpretation of what *Barnes* did *not* hold is fully consistent with other Supreme Court precedent in free speech cases. It is not necessary in the field of regulating expressive conduct that the "narrow tailoring" of such statutes requires elimination of all less restrictive alternatives. See, *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 477–480, 109 S.Ct. 3028, 3033–3034, 106 L.Ed.2d 388 (1989). Moreover, the Supreme Court has been "loath to second-guess the Government's judgment" with respect to the degree of regulation necessary to further the government's legitimate interests. Id., 492 U.S. at 478, 109 S.Ct. at 3034.

Once it is established that a burden may be imposed on the expressive content of erotic dancing by requiring some clothing—pasties and a G-string—then it does not seem to me from a constitutional standpoint that a modest increase in the amount of body covering required by the law really adds any significant, incremental burden on the *expressive* component of the dance. As Justice Souter observed, ". . . the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message." *Barnes,* 501 U.S. at 586;

111 S.Ct. at 2471. So, in this case, that erotic message may still be expressed with exposure of three-fourths of the breasts and two-thirds of the buttocks in the same manner it would be expressed while wearing pasties and a G-string. Or, even if there is some added incidental repression of speech, deference must be granted to the law making authority under *Board of Trustees v. Fox, supra,* in deciding the degree of regulation necessary to further the government's legitimate interests.

To be sure, so long as an anti-nudity statute is subject to any First Amendment scrutiny, i.e., an *O'Brien* evaluation, there must be a line in every case beyond which the law makers cannot go in requiring clothing or prohibiting exposure in some contexts. See *DeWeese v. Town of Palm Beach,* 812 F.2d 1365 (11th Cir.1987) (striking down as an irrational violation of the plaintiff's liberty interests under the Fourteenth Amendment an ordinance requiring male joggers to wear shirts.) Definition of that constitutional line, however, must await a case-by-case development of the law and further guidance from the Supreme Court. Suffice it to say that Ordinance 92–12 of St. Johns County does not cross that constitutional boundary.

## II

In the order denying the Plaintiff's application for preliminary injunction based upon the foregoing analysis, I observed that "given the Court's determination in this order of the central constitutional issue presented, it may be that the case as a whole has been decided." The Plaintiff was therefore directed to file a memorandum enumerating the factual and legal issues, if any, remaining for decision. In response (Doc. 15 filed June 16, 1992) the Plaintiff specified three additional constitutional assertions requiring resolution:[5] (1) that the ordinance is overbroad in violation of the First and Fourteenth Amendments; (2) that the ordinance is vague in violation of the due process clause of the Fourteenth Amendment; and (3) that the

---

5. The Plaintiff also suggested that the case be abated pending the appeal from the denial of preliminary injunctive relief. That was done. Then, when the case returned from the Court of

Appeals, the Court allowed some limited discovery before taking under submission the pending cross motions for summary judgment.

ordinance makes distinctions which violate the equal protection clause of the Fourteenth Amendment.

■ A. *Overbreadth.* The Plaintiff argues that even if the St. Johns County Public Nudity Ordinance applies to it, and is constitutional when so applied, it is nevertheless unconstitutional and unenforceable against anyone because it is "so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court." *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975). Specifically, the Plaintiff argues that well known theatrical productions such as Hair, Equus, and Ballet Africains, each of which contain scenes of frontal nudity of the body as a whole, would be prohibited by the Ordinance; that such productions are clearly protected speech under the First Amendment; and that the Ordinance is therefore unconstitutionally overbroad and invalid.

Two intertwined issues are presented by this argument. The first is whether the Plaintiff has standing to make it, and the second involves the standard to be applied in deciding the overbreadth claim on its merits if the Plaintiff does have standing. The resolution of both of these issues is governed by *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and *Geaneas v. Willets,* 911 F.2d 579 (11th Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991).

In *Broadrick* the Supreme Court considered a First Amendment attack on an Oklahoma statute patterned after the Hatch Act restricting political activities of certain state employees. There, as here, the plaintiffs claimed that even though their political fund raising conduct fell squarely within the constitutionally valid proscriptions of the statute, it should nevertheless be condemned as unconstitutional because it was overbroad to the point of regulating pure speech such as the wearing of political buttons or the displaying of bumper stickers. The Court began its analysis by noting that ordinarily "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to oth-

ers, in other situations not before the Court." 413 U.S. at 610, 93 S.Ct. at 2915. The Court then acknowledged that First Amendment cases had come to be recognized as an exception to the general rule and that litigants are permitted to raise overbreadth claims when the "statute's very existence may cause others not before the Court to refrain from constitutionally protected speech or expression." Id. at 612, 93 S.Ct. at 2916. The Court noted, however, that when First Amendment overbreadth claims have been invoked against ordinary criminal laws that are sought to be applied to protected conduct, the usual remedy is to reverse any criminal conviction flowing from the law as unconstitutionally applied, not to adjudicate that the law itself is facially invalid. The Court then concluded (Id. at 615–616, 93 S.Ct. at 2917–2918):

It remains a "matter of no little difficulty" to determine when a law may properly be held void on its face and when "such summary action" is inappropriate. *Coates v. City of Cincinnati,* 402 U.S. 611, 617, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United States,* 394 U.S. 165, 174–175, 89 S.Ct. 961, 966–967, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely

speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that § 818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

In *Geaneas v. Willets,* 911 F.2d 579 (11th Cir.1990), the Court of Appeals had occasion to apply *Broadrick* in a case involving an anti-nudity ordinance predicated on the Twenty First Amendment and the authority of the states to regulate establishments licensed to sell alcohol as decided in *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). The contention was made in *Geaneas* that the ordinance in question was overbroad because it applied to establishments "dealing" in alcoholic beverages, not merely those licensed to sell alcohol, and that it might therefore be applied against establishments beyond the reach of the Twenty First Amendment. The Court, citing *Broadrick,* refused to consider the overbreadth claim (911 F.2d at 584–585):

> The overbreadth doctrine clearly does not apply here. As we discuss above, there can be no doubt that the Daytona Beach ordinance constitutes a valid exercise of the City's twenty-first amendment power to ban nude dancing in bars. Such a proscription lies at the core of the City's powers under the twenty-first amendment. The plaintiffs' conduct in the present case, moreover, rests extremely close to this core. Whether or not the ordinance reaches to conduct at a distance from these core concerns, the plaintiffs clearly have no standing under *Broadrick* to challenge, on this basis, the ordinance's application to them. The plaintiffs' overbreadth argument lacks foundation.

The principles distilled from these controlling decisions are that the overbreadth doctrine as an exception to the requirement of standing in First Amendment cases is to be sparingly applied; that this is especially true in cases like this one involving a criminal statute and a plaintiff whose asserted First Amendment interest constitutes expressive conduct as distinguished from protected pure speech; and for the overbreadth claim to be entertained in such a case the excessive scope of the statute or ordinance being reviewed must not only be real but substantial, and not subject to cure through case-by-case analysis and limiting judicial construction or partial invalidation.

Applying those principles to this case it becomes clear that the Plaintiff lacks standing. Even if, as Plaintiff suggests, the sweep of Section 6 of the Ordinance (quoted *supra*) is broad enough to encompass protected expression in the form of incidental nudity in theatrical performances having serious artistic value (so as to be non-obscene), it is here that Section 7 of the Ordinance would step in to safeguard the protected speech.

> Section 7. EXEMPTIONS: The prohibitions of section 6 of this ordinance shall not apply:
>
>     \*     \*     \*     \*     \*     \*
>
> b) When the conduct of being Nude cannot legally be prohibited by this ordinance (i) because it constitutes a part of a bona fide live communication, demonstration or performance by a Person wherein such nudity is expressive conduct incidental to and necessary for the conveyance or communication of a genuine message or public expression and is not a mere guise or pretense utilized to exploit the conduct of being Nude for profit or commercial gain (see for instance *Board of County Commissioners vs. Dexterhouse,* 348 So.2d 916 (Fla. 2nd DCA 1977) and as such is protected by the United States or Florida Constitution or (ii) because it is otherwise protected by the United States or Florida Constitution.

Furthermore, any court called upon to interpret and apply Section 7 exemptions would also have the guidance of the pertinent legislative findings embodied in the whereas clauses of the Ordinance:[6]

---

**6.** Additionally, Section 2(b) entitled "Intent," re-

states *verbatim* the language of Section 7(b) quot-

m) WHEREAS, the Board's sole intent in enacting this ordinance is to prohibit the conduct of being Nude in Public Places and to suppress the adverse secondary effects such nudity generates, the Board nevertheless recognizes that there may be instances wherein appearing Nude in a Public Place may be expressive conduct incidental to and a necessary part of the freedom of expression that is protected by United States or Florida constitutional provisions; and,

\* \* \* \* \* \*

x) WHEREAS, the Board is not hereby prohibiting nudity in truly private places or prohibiting nudity which is protected by United States or Florida constitutional provisions; and,

y) WHEREAS, the Board finds and determines that the express exemption contained in Section 7(b)(ii) of this ordinance provides adequate protection to Persons who, without such express exemption, might otherwise be prevented or discouraged by the ordinance from exercising constitutionally protected rights.

I conclude that, in light of the Section 7 exemptions and judging the ordinance as a whole under the principles of *Broadrick* and *Geaneas,* there is no real and substantial overbreadth in the measure that cannot await case-by-case limiting construction or, if necessary, partial invalidation.[7] It follows, in other words, that the Plaintiff lacks standing to raise its overbreadth claims in this case.

■ B. *Vagueness.* The Plaintiff argues that the exceptions carved out by Section 7 of the Ordinance are unconstitutionally vague thereby rendering the law as a whole in violation of the due process clause of the Fourteenth Amendment. Such vagueness, it is said, arises from the need to interpret the words in Section 7 which exempt any "bona fide live communication, demonstration or performance ... protected by the United States or Florida Constitution." (See Doc. 32, Plaintiff's Memorandum of Law, pages 8–13).

At the threshold of this argument is the question, as in the case of the Plaintiff's overbreadth contention, of whether the Plaintiff has standing to assert the claim since there is no suggestion that the alleged vagueness touches in any way the application of the ordinance to the Plaintiff's nude dancing activity. The answer, in my view, is the same. The exception was clearly intended to stake out those theatrical performances involving nudity with artistic value so as to be non-obscene and within the protection of the First Amendment. Merely because it is impractical if not impossible to precisely describe in words all of the types of nude performances falling within the protection of the First Amendment does not make the exception unconstitutionally vague. Case-by-case adjudication is required and will satisfy the due process requirements of the Fourteenth Amendment. The issue is not unlike—and, indeed, is closely related to—the question as to whether the obscenity laws are themselves unconstitutional for vagueness. How does one know when something is obscene?[8] In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the

---

ed in the text, presumably for the purpose of reinforcing the idea that the ordinance was not intended to preclude non-obscene theatrical productions.

**7.** The ordinance also contains a severance clause:

> Section 11. SEVERABILITY: If any section, subsection, sentence, clause, phrase, word or provision of this ordinance is for any reason held invalid or unconstitutional by any court of competent jurisdiction, whether for substantive, procedural, or any other reason, such portion shall be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions of this ordinance.

The presence of the exemption provision, Section 7, and the whereas clauses quoted in the text together with this severance clause preserving the main thrust of the ordinance in the event of partial invalidity, all serve to distinguish *Triplett Grille, Inc. v. City of Akron,* 816 F.Supp. 1249 (N.D.Ohio 1993) the only post *Barnes* decision upon which the Plaintiff principally relies in making its overbreadth argument.

**8.** In *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964), Justice Stewart declared in his concurring opinion that the Court's ongoing effort, at that time, to define obscenity constituted a "task of trying to define what may be indefinable ... But I know it when I see it ..."

Court referred to "the somewhat tortured history of the Court's obscenity decisions," 413 U.S. at 20, 93 S.Ct. at 2612, and then declared, after laying down the now familiar three part *Miller* test for identification of obscene matter (Id. at 25, 93 S.Ct. at 2615):

> If a state law that regulates obscene material is thus limited, as written *or construed*, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the *ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.* (Emphasis supplied).

Clearly, then, an articulated exception in an anti-nudity ordinance which is plainly intended to carve out non-obscene and therefore protected displays of nudity in artistically valuable theatrical performances cannot be condemned for facial vagueness, otherwise the obscenity laws, which must undertake the same chore (i.e., carving out non-obscene matter per *Miller* either as written or as construed) would necessarily suffer the same condemnation.[9]

I conclude that the Ordinance is not unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment.

■ C. *Denial of Equal Protection.* The Plaintiff essentially makes two arguments in its effort to demonstrate that the Ordinance denies it equal protection of the law. First, it contends that the Ordinance distinguishes between commercial and noncommercial forms of public nudity, and since the strict scrutiny standard should be applied rather than the rational basis test because First Amendment rights are involved, the distinction cannot be justified. The argument fails, however, simply because it proceeds from a mistaken premise. The Ordinance does *not* distinguish between commer-

cial and non-commercial nudity in public places. Both are prohibited. The difference that *is* alluded to in the law occurs in the factual findings which, as described by the Defendant, "merely determine that commercial public nudity escalates the adverse secondary effects associated with free public nudity." (Doc. 27, Defendant's Memorandum, page 4). The other distinction drawn between "free" nudity and nudity for profit or commercial exploitation is found in Sections 3(h) and 7(a). These sections, respectively, define and exempt places customarily provided or set apart for nudity such as locker rooms or public rest rooms unless the nudity in such a place is being "used for the promotion of business or is otherwise commercially exploited." The commercial, noncommercial distinction, in other words, is made in the form of a narrow exception to an exception and does not alter in any way the principal objective of the Ordinance, namely, the regulation of public nudity whether commercially motivated or not. There is no unconstitutional violation of the Plaintiff's right to equal protection in this aspect of the Ordinance.

■ The Plaintiff's second equal protection claim is grounded in *Salem Inn, Inc. v. Frank,* 522 F.2d 1045 (2d Cir.1975), in which the court held that an ordinance distinguishing between topless dancing in a bar and topless dancing in the "legitimate" theater violated equal protection. The opinion proceeded upon the assumption, however, that nudity in both places enjoyed the same level of First Amendment protection and is now undermined by the Supreme Court's decision in *Barnes.* Moreover, it is difficult to see how an effort to draft distinctions between protected and unprotected forms of speech or expressive conduct required by the First Amendment could, without more, be violative

---

9. Interestingly, in footnote 8 to the *Miller* opinion (413 U.S. at 26, 93 S.Ct. at 2616), the Court specifically noted that it was not dealing in that case with live conduct, stating that "the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior."

Also, in footnote 9 (id. at 26, 93 S.Ct. at 2616), with respect to the elusive nature or vagueness of

the concept of obscenity, the Court said: "The mere fact juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged ... [I]t is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system."

of the equal protection clause of the Fourteenth Amendment.

I conclude that there are no genuine issues of material fact, that the St. Johns County Public Nudity Ordinance successfully withstands the constitutional challenges of the Plaintiff, and that the Defendant is entitled to summary judgment as a matter of law. The Plaintiff's motion for that relief is Denied; the Defendant's is Granted. The Clerk is instructed to enter judgment accordingly.

IT IS SO ORDERED.

DONE and ORDERED.