SBC ENTERPRISES, INC., and
Shawn B. Cliche, Plaintiffs,

v.

CITY OF SOUTH BURLINGTON,
Defendant.

No. 95–CV–144.

United States District Court,
D. Vermont.

June 30, 1995.

Robert H. Anderson, Bauer, Anderson, Gravel & Abare, Colchester, VT, James A. Palminsano, Montpelier, VT, for plaintiffs.

Steven F. Stitzel, Stitzel & Page, P.C., Burlington, VT, for defendant.

*Opinion and Order*

GAGLIARDI, Senior District Judge.

Plaintiffs are challenging the validity of an ordinance passed by the City Council of South Burlington that prohibits public nudity. Plaintiffs primarily seek to enjoin the enforcement of the ordinance, and they filed a complaint seeking preliminary and permanent injunctions, declaratory judgment, and damages. Of the fourteen substantive counts in the complaint, the first eight are federal claims, including challenges based on the First Amendment, substantive and procedural due process, equitable estoppel, overbreadth, taking property without just compensation, the prohibition of bills of attainder, and equal protection. The other six claims are based on Vermont law. Defendant has filed a Motion for Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c), as to Counts I, II, and IV through XIV.

A hearing on the application for a preliminary injunction was held on June 21, 1995. At that hearing, the parties agreed that the Court should combine the hearings on Plaintiffs' application for preliminary and permanent injunctions. In addition, this presents an occasion to rule on Defendant's Rule 12(c) motion. To the extent that the Court relies on material not included in the pleadings, the motion will be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. Facts

The parties have stipulated to the following facts. Plaintiff SBC Enterprises, Inc., is a Vermont corporation, of which plaintiff Cliche is the sole shareholder. Plaintiffs propose to operate a nightclub offering entertainment, including nude dancing, within the City of South Burlington. On April 17, 1995, a proposed ordinance prohibiting nudity in public (hereinafter "Ordinance") was introduced and read at a public meeting of the City Council. After publication of a notice, the City Council conducted a public hearing on the Ordinance on April 26, 1995, and unanimously adopted the Ordinance and a Resolution concerning the purpose of the Ordinance.[1] Approximately 200 people at-

---

1. The substantive sections of the Ordinance as adopted are as follows:

Section 3. *Definitions.*

"Nudity" shall mean the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a

tended both meetings of the City Council. Plaintiffs filed their complaint on May 12, 1995.

## II. Standard for Judgment on the Pleadings and Summary Judgment

Pursuant to Fed.R.Civ.P. 12(c), "[j]udgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. International Union UPGWA,* 47 F.3d 14, 16 (2nd Cir.1995). When ruling on a motion for judgment on the pleadings, the Court must "view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Davidson v. Flynn,* 32 F.3d 27, 29 (2nd Cir.1994) (quoting *Madonna v. U.S.,* 878 F.2d 62, 65 (2nd Cir.1989)).

Summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must "view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion...." *Gallien v. Connecticut Gen. Life Ins. Co.,* 49 F.3d 878, 882 (2nd Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. Supplemental Jurisdiction

■ Counts IX–XIV are based on Vermont state law. Plaintiffs request that this Court exercise its supplemental jurisdiction under 28 U.S.C. § 1367. However, the Court declines supplemental jurisdiction for these Counts pursuant to § 1367(c)(3), since the Court is dismissing all federal claims in this order. Even if this were not the case, the Court would decline supplemental jurisdiction under § 1367(c)(1) because the claims raise complex issues of state law. Therefore,

Counts IX–XIV are dismissed without prejudice.

## IV. Discussion

### Count I—Unlawful Prior Restraint

■ Plaintiffs claim that the Ordinance acts as an unlawful prior restraint on their First Amendment rights. Regardless of any possible First Amendment violation, the Ordinance is clearly not a prior restraint. A prior restraint prevents the publication of particular information or speech that has not yet been published, whereas the Ordinance punishes an individual only *after* the "speech" has been made and the violator has utilized the complete judicial process. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

Plaintiffs' claim raises the issue of the validity of the Ordinance under the First Amendment. The issue of nude dancing in relation to the First Amendment is governed by *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). *Barnes* dealt with an Indiana statute, the wording of which is virtually identical to the South Burlington Ordinance. *Id.* at 569, n. 2, 111 S.Ct. at 2462, n. 2. A three-Justice plurality, in an opinion written by Chief Justice Rehnquist, held that nude dancing is "expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so." *Id.* at 566, 111 S.Ct. at 2460. The plurality then applied the four-pronged test set forth in *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968):

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First

---

fully opaque covering of any portion of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

Section 4. *Public Indecency.*

 a. No person shall knowingly or intentionally in a public place:
 1. engage in sexual intercourse;
 2. appear in a state of nudity;
 3. fondle his/her genitals;
 4. fondle the genitals of another person.
 b. No person who owns, leases or controls property shall knowingly allow any person to engage in the conduct described in subparagraph a. above at any time such property is open to the public.

Amendment freedoms is no greater than is essential to the furtherance of that interest.

The plurality upheld the statute, stating that it furthered "a substantial government interest in protecting order and morality." *Barnes, supra,* at 569, 111 S.Ct. at 2462.

Justice Souter concurred in the judgment, agreeing that nude dancing is expressive conduct under the First Amendment and that the *O'Brien* test applies. However, Justice Souter upheld the statute "not on the possible sufficiency of society's moral views to justify the limitations at issue, but on the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by respondents' establishments." *Barnes, supra,* at 582, 111 S.Ct. at 2468–69. This interest in controlling secondary effects need not be articulated by the legislature at the time the law was enacted; rather, it is sufficient if the government has a current interest in preventing secondary effects. *Id.* Referring to *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), Justice Souter concluded that:

> [i]n light of *Renton*'s recognition that legislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects, the State of Indiana could reasonably conclude that forbidding nude entertainment ... furthers its interest in preventing prostitution, sexual assault, and associated crimes. Given our recognition that 'society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate,' I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case.

*Barnes, supra,* at 584–85, 111 S.Ct. at 2470 (citations omitted).

Because *Barnes* produced no single majority rationale, this Court will apply the analysis of Justice Souter as the most narrow grounds for analyzing the Ordinance at issue, as other lower courts have done.[2] *See, e.g., Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129 (6th Cir.1994); *Cafe 207, Inc. v. St. Johns County,* 856 F.Supp. 641 (M.D.Fla.1994).

Under Justice Souter's approach, the Ordinance is valid. Indeed, this Court need not engage in an analysis of the Ordinance beyond reference to Justice Souter's opinion. Because the regulations in the instant case and in *Barnes* are identical, there is little to add that would explain further why the Ordinance is valid. If anything, this case presents a regulation that is easier to uphold than that in *Barnes,* since the Resolution passed by the City Council indicates that it considered secondary effects.[3]

Plaintiffs make two arguments in an attempt to avoid the dictates of *Barnes.* First, Plaintiffs argue that the Ordinance fails the first prong of the *O'Brien* test because the City did not have the power to pass the Ordinance. However, Plaintiffs' argument challenges the authority of the municipality under Vermont law, which relates to the state law claims dismissed above. The first prong of *O'Brien* merely requires that the government have the constitutional power to pass the regulation, a test that is satisfied here under a state's traditional police power to protect public welfare and safety. This Court need not address the City's power under state law.

Second, Plaintiffs wish to present evidence concerning the statements of government agents that purport to establish an improper motive for passing the Ordinance. However, this sort of inquiry has been foreclosed by Supreme Court precedent. *See Barnes, supra,* at 583, 111 S.Ct. at 2469 (Souter, J. concurring); *O'Brien, supra,* at 383–84, 88 S.Ct. at 1682–83 ("It is a familiar

---

2. Justice Scalia concurred in the judgment on broader grounds than either Justice Souter or the plurality.

3. The Resolution states, in pertinent part, that "the City Council has considered the potential impact of the regulated conduct on the public health, safety and welfare of the City," and that the Council "is aware that numerous communities and states have determined that the regulated conduct ... is detrimental to the public health, safety and welfare and constitutes a nuisance."

principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive ...."). Plaintiffs ask this Court to follow *International Eateries of America v. Broward County, Fla.,* 941 F.2d 1157 (11th Cir.1991), *cert. denied* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992), and require evidence that the government did in fact intend the regulation to address secondary effects. However, this case is clearly distinguishable on its facts. In *International Eateries,* the court addressed a zoning regulation of adult nightclubs. In interpreting *Barnes,* the court adopted Justice Souter's view that the governmental interest must be directed at secondary effects, but the court also followed *Renton* in requiring evidence that the legislature actually was interested in combating secondary effects. However, the *International Eateries* court stated that it followed *Renton* because the zoning regulation at issue more closely resembled the facts of *Renton* than *Barnes. International Eateries, supra,* at 1161, n. 2. In the instant case, the *Barnes* analysis clearly governs, given the similarity of the two regulations.

Plaintiffs point out that an exception to this rule foreclosing any inquiry into legislators' motives has been made in the Establishment Clause context, citing *Church of Scientology v. City of Clearwater,* 2 F.3d 1514 (11th Cir.1993), *cert. denied* — U.S. —, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994). In dicta, the court questioned the vitality of this rule in the free speech area. *Id.* at 1529. None of the cases cited therein addressed an inquiry into the motives of legislators for passing a law. Rather, they addressed the actions of government agents that infringed protected speech, for example a government employer who fires an employee for making certain statements. This dicta has not persuaded this Court to abandon the rule set forth in *O'Brien* and reaffirmed by Justice Souter in *Barnes.*

### Count II—Denial of Substantive Due Process

Plaintiffs claim that the Ordinance is arbitrary and capricious, was adopted without sufficient evidence, and bears no reasonable relationship to the lawful exercise of the police power, resulting in a denial of substantive due process in violation of the Fifth and Fourteenth Amendments.

 A simple test applies to substantive due process claims relating to legislative actions. "Legislative acts are presumed valid and must be upheld if rationally related to a legitimate governmental objective." *Interport Pilots Agency v. Sammis,* 14 F.3d 133, 145 (2nd Cir.1994) (citations omitted). Here, the governmental objective of preventing the adverse secondary effects of nude dancing is certainly legitimate, and the prohibition of nude dancing is closely related to that objective. Therefore, no denial of substantive due process has occurred.

### Count IV—Unconstitutionally Overbroad and Vague

This count challenges the facial validity of the statute, not the specific application to nude dancing. The complaint states that the Ordinance is overbroad because it could be applied to sunbathers. The Plaintiffs' supplemental memorandum adds the argument that the law would apply to the performance of works with "serious" artistic value, such as "Hair," "Oh Calcutta," etc.

 The argument with respect to sunbathers has no merit. Nude dancing gains First Amendment protection because it contains an expressive component, namely the dancing. As the *Barnes* Court intimated, the nudity itself does not constitute protected speech, and sunbathers have no First Amendment right to wear the attire of their choice. *See Barnes, supra,* at 571, 111 S.Ct. at 2463 (plurality opinion); *Id.* at 581, 111 S.Ct. at 2468 (Souter, J., concurring in the judgment).

 The overbreadth argument with respect to live performances of serious works containing nudity presents a closer question. The First Amendment overbreadth doctrine is an exception to the rule that a plaintiff cannot base his claim on how the statute might be applied to other people. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). The concern is that an overbroad law may

"threaten[ ] others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987).

■ However, simply conceiving of a situation where the Ordinance would be unconstitutional as applied is not sufficient to succeed on an overbreadth claim. *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick, supra,* at 615, 93 S.Ct. at 2917. "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Id.* at 613, 93 S.Ct. at 2916. *See Cafe 207, Inc.,* 856 F.Supp. at 647–49 (holding that a similar county public nudity ordinance was not overbroad). *But see Triplett Grille, Inc.,* 40 F.3d at 135–36 (striking down a public nudity ordinance as overbroad).

■ The Ordinance under consideration here is not substantially overbroad. The only examples of unconstitutional application cited by Plaintiffs are the performance of serious artistic works involving nudity, and they name only a few. The Plaintiffs have the burden of showing that the Ordinance is *substantially* overbroad, and Plaintiffs have failed to meet that burden here. In sum, the Ordinance does not encompass a sufficient amount of protected behavior to make it substantially overbroad.

■ The issue of vagueness was raised in Count IV, but it was not discussed in either party's legal memoranda or at the hearing. In any event, the Ordinance is not vague. The vagueness "must be such that the statute is incapable of giving the person of ordinary intelligence a reasonable opportunity to know what is prohibited by failing to provide explicit standards ensuring that it is not arbitrarily enforced." *Dorman v. Satti,* 862 F.2d 432, 436 (2nd Cir.1988), *cert. denied* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)). The Ordinance clearly prohibits all nudity in public, a quite explicit standard, and it is not susceptible to a vagueness challenge.

### Count V—Taking Property Without Compensation and Without Due Process of Law

Count V raises two separate claims, a takings claim and a procedural due process claim. First, the Plaintiffs assert that the Ordinance acts to take a property interest without just compensation, in violation of the Fifth Amendment.

■ Even assuming, without deciding, that the Plaintiffs have a property interest in their business that the Ordinance has infringed, the Supreme Court jurisprudence in this area makes it clear that the takings claim has no merit. In surveying the prior cases, the Court in *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), noted that there are two categories of regulatory action that demand just compensation: when the regulation causes the property owner to suffer a physical invasion of his property, and when the regulation takes away *all* economically beneficial uses of the property. *Id.* —— U.S. at ——, 112 S.Ct. at 2893. Plaintiffs do not fit in either category.

If the takings claim does not fall into one of these two categories, then the Court has previously engaged in an ad hoc, factual determination of the public interest furthered by the regulation. *Id.* However, in this case, the public interest furthered by the Ordinance clearly survives this balancing test. As the Court stated in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 125, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978) (citations omitted):

[I]n instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land, this Court has

upheld land-use regulations that destroyed or adversely affected recognized real property interests.... [C]hallenges have also been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm.

In this case, the asserted property interest is the value of Plaintiffs' business. However, the Ordinance only prohibits the entertainers from being nude. The plaintiffs have not asserted that the business could be successful only if the entertainment involves nudity. Plaintiffs can still present erotic dancing that complies with the Ordinance or other forms of entertainment. In sum, the injury to the Plaintiffs does not rise to the level of a taking under the Fifth Amendment.

■ The second claim in Count V is a procedural due process claim under the Fifth and Fourteenth Amendments. "In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of 'an opportunity ... granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case.'" *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2nd Cir.1988) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). "The deprivation of a procedural right to be heard, however, is not actionable when there is no protected right at stake." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2nd Cir. 1994).

On its face, this claim fails. Assuming without deciding that the Plaintiffs have a property interest at stake, due process was provided in this case. The Ordinance was proposed and read at a public meeting with 200 people attending. One day later, notice was published in the local newspaper of a public hearing on an ordinance that "regulates public nudity, which is deemed to be a public nuisance." Complaint, Exhibit 3. The notice gave the address of an office where one could obtain the full text of the Ordinance. Then, eight days later at the published time, a public hearing was held with 200 people attending, during which the Ordinance was adopted. While the Ordinance was amended after it was proposed at the first meeting, the adopted Ordinance prohibited less conduct than the ordinance as proposed, making the amendment insignificant for this analysis. While this Court does not address the issue of whether the adoption of the Ordinance was in violation of state law, the Ordinance does not violate the due process clauses of the federal Constitution.

### Count VI—Lack of Proper Predicate

The complaint asserts that the City did not have evidence of adverse secondary effects, making it unconstitutional as lacking a proper predicate. The necessity of evidence of secondary effects is an issue of First Amendment law and was addressed under Count I above. Therefore, this Count has no merit as a separate claim.

### Count VII—Improper Motive

The complaint states that because of the timing of the Ordinance (coinciding with Plaintiffs' intention of opening the club) and statements made by City Councilmen, the Ordinance is a bill of attainder intended to punish the Plaintiffs.

■ "No State shall ... pass any Bill of Attainder." U.S. Const.Art. I, § 10, cl. 1. A bill of attainder is defined as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802–03, 53 L.Ed.2d 867 (1977). There are three tests for determining if a statute imposes "punishment" under the clause:

1) *Traditional test*—does the statute impose traditional punishment under the clause? This includes death, imprisonment, banishment, confiscation of property, and barring one from participation in specified vocations.

2) *Functional test*—can the statute, viewed in terms of the type and severity of burdens imposed, reasonably be said to further nonpunitive legislative purposes?

3) *Motivational test*—does the legislative record evince an intent to punish?

*New York State Trawlers Assoc. v. Jorling,* 16 F.3d 1303, 1312 (2nd Cir.1994) (citing *Nixon, supra* ); *see also Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). Concerning the functional test, if there is an apparent legitimate purpose for a law, courts generally will not find an intent to punish. *McMullen v. U.S.,* 989 F.2d 603, 613 (2nd Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 301, 126 L.Ed.2d 249.

■ The Plaintiffs advanced their argument under the motivational theory. Even assuming, without deciding, that the Ordinance applies to an easily identifiable individual, the Ordinance does not fail the motivational test. While the timing of the Ordinance makes it likely that the City Council was responding to the Plaintiffs' intention of providing nude entertainment, this fact does not demand the conclusion that the Council intended to punish the Plaintiffs in particular. Rather, the Council intended to prevent *anyone* from providing nude entertainment, a decision prompted by the knowledge that the City would soon have such entertainment within its borders unless it passed an ordinance to prevent it. This does not constitute punishment under the Bill of Attainder clause.

### Count VIII—Denial of Equal Protection

■ Plaintiffs allege that the Equal Protection Clause of the Fourteenth Amendment is violated because movie theatres present "the same or similar form of free expression." [4] The Clause guarantees equal protection to persons "similarly situated." However, the legislature has substantial latitude in determining what is "similar" in relation to the problem being addressed. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Therefore, equal protection claims usually receive rational basis review, that is, "that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.* Stricter review applies if the classifications affect a suspect class or infringe a fundamental right. *Id.* at 216–17, 102 S.Ct. at 2394–95.

■ In the instant case, the equal protection claim fails. First, movie theatres and live nude dancing establishments are not "similarly situated." After *Barnes,* nude dancing receives less First Amendment protection than other forms of expression, thus the forms of expression are not similar. "[I]t is difficult to see how an effort to draft distinctions between protected and unprotected forms of speech or expressive conduct required by the First Amendment could, without more, be violative of the equal protection clause of the Fourteenth Amendment." *Cafe 207, Inc.,* 856 F.Supp. at 650–51 (rejecting an equal protection claim concerning a similar statute prohibiting public nudity). Plaintiffs argue that a fundamental right of free expression is involved here, requiring strict scrutiny, but there is clearly no fundamental right to nude dancing after *Barnes.*

### V. Conclusion

For the foregoing reasons, summary judgment is granted in favor of the Defendant as to Counts I, II, and IV through VIII. As discussed above, Counts IX through XIV are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

So Ordered.

---

**4.** In their memoranda, Plaintiffs argue that exotic dance has been performed at other nightclubs in South Burlington before, and that people display their buttocks in public swimming areas. However, these arguments are irrelevant to the equal protection analysis because the Ordinance now in place applies to those situations.