United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 7, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-50220

BGHA, LLC, doing business as Camelot,

Plaintiff-Appellant,

versus

CITY OF UNIVERSAL CITY, TEXAS,
FLOYD BRYANT, in his Individual and Official Capacity as Police Chief,
WESLEY BECKEN, in his Individual and Official Capacity as Mayor,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before DeMOSS and STEWART, Circuit Judges, and FALLON, District Judge.*

STEWART, Circuit Judge:

Out of concern over the adverse secondary effects sexually orientated businesses ("SOBs")

were bringing to it and surrounding communities, the City of Universal City, Texas ("City") enacted

SOB Ordinance 504 (the "Ordinance").[1] The Ordinance imposes various licensing and zoning

restrictions on SOBs. BGHA, L.L.C, doing business as Camelot, an operator of an adult cabaret in

---

*District Judge of the Eastern District of Louisiana, sitting by designation.

[1]The terms "SOB" and "adult entertainment establishment" will be used interchangeably.

the City, filed suit under 42 U.S.C. § 1983 against the City, the City's Police Chief Floyd Bryant, and the City's Mayor Wesley Becken (collectively, the "Defendants") seeking injunctive, declaratory, and monetary relief for alleged violations of the First and Fourteenth Amendments. The district court initially denied Camelot's request for a temporary restraining order. Upon the parties' consent, and consistent with 28 U.S.C. § 536(i), the case was assigned to a magistrate judge for all purposes, including trial and entry of judgment. The request for injunctive relief was mooted when Camelot combined its request for injunctive relief with a trial on the merits. The parties then filed cross motions for summary judgment. The magistrate judge granted the Defendants' motion for summary judgment and denied Camelot's. Finding no constitutional violations, we affirm.

I.

Camelot operates an adult cabaret in the City. The Ordinance defines an "adult cabaret" as a night club, bar, restaurant or similar commercial establishment which regularly features persons who appear in a state of nudity, live performances which are characterized by the exposure of specified anatomical areas and specified sexual activities, or films and other media which are characterized by the exposure of specified anatomical areas and specified sexual activities. Under the Ordinance, the owner of an adult entertainment business is required to obtain a license from the City. To obtain a license, an owner must demonstrate, among other things, that the business is in a permissible location. In that regard, the Ordinance requires that the adult entertainment establishment be located within a "specified zoning district" as set forth in the City Zoning Code, and not be situated (1) within five hundred feet of a church, school, daycare center or public park; (2) within three hundred feet of a boundary of a residential district or property line of a residential use; (3) or within one thousand feet of another license. Because Camelot is located within three hundred feet of a residential district, the

2

City denied Camelot's application for a license. The City, however, allowed Camelot to operate as a non-conforming SOB for three years in order to permit the amortization of the investment in its business.

Nearing the expiration of its non-conforming use status, Camelot filed a request for a one-year exemption from the zoning restrictions. The City Council denied Camelot's request and its subsequent re-application for an adult cabaret license. Camelot continued to operate its business without a valid license and was issued over twenty citations by the City. Camelot filed suit arguing that it was not an adult entertainment establishment and that the Ordinance is unconstitutional. The magistrate judge granted summary judgment to the Defendants, finding that Camelot is an adult entertainment establishment and that the Ordinance is constitutional. The magistrate judge dismissed the claims brought against Police Chief Floyd Bryant and Mayor Wesley Beckam as duplicitive of the claims brought against the City. Camelot appeals the magistrate judge's finding that the Ordinance is constitutional.

## II.

We review the grant of summary judgment *de novo*, applying the same standards as the district court. See Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001). Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.

## III.

Camelot argues that the Ordinance is an unconstitutional prior restraint (as applied) on its free speech. In Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991), a three-judge plurality of the Supreme Court held that an enactment banning public nudity, as applied to nude dancing, can be upheld as a

3

content-neutral time, place, and manner regulation if it comports with the intermediate scrutiny test enunciated in United States v. O'Brien, 391 U.S. 367, 376-77 (1968).[2] In O'Brien, the Supreme Court set out the four-part test as follows:

> A Government regulation is sufficiently justified [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction alleged First Amendment freedoms is no greater than is essential to the furthe

391 U.S. at 376-77.[3]

On appeal, Camelot contests the magistrate judge's finding only with respect to the second element - that the Ordinance furthers a substantial government interest. In SDJ, Inc. v. City of Houston, this Court noted that a "city may establish its substantial interest in the regulation by compiling a record with evidence that it may be 'reasonably believed to be relevant to the problem that the city addresses.'" 837 F.2d 1268, 1274 (5th Cir. 1998). The Court further noted that

---

[2]For the first time on appeal, Camelot argues that the Ordinance is not a content-neutral time, place, and manner regulation. Camelot's assertion that it raised this argument below fails. The magistrate judge specifically noted that Camelot "does [not] contest the characterization of the Ordinance as a "'content-neutral' time, place, and manner regulation." Thus, Camelot has waived this argument.

[3]Camelot asserts that the magistrate judge incorrectly applied the test in O'Brien in determining whether the Ordinance is constitutional. Relying on LLEH v. Wichita County, 289 F.3d 358 (5th Cir. 2002), Camelot asserts that the test articulated in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986) is applicable. In City of Renton, the Supreme Court held that zoning "regulations are acceptable as long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." Id. at 47. Additionally, the zoning regulations must be narrowly tailored to achieve the Government's interest. Id. at 52. The City has asked this Court to find the two tests interchangeable. We need not decide whether the O'Brien test and City of Renton tests are interchangeable because under either test Camelot's constitutional challenge to the Ordinance fails.

4

"legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities." Id.

The magistrate judge found that the City demonstrated that the Ordinance furthered a substantial government interest based on the following evidence: 1) the Preamble to the Ordinance which describes the City's purpose and intent for enacting the Ordinance; 2) the sworn affidavits of individuals directly involved in the study, development, and enactment of the Ordinance; and 3) the official minutes of three City Council meetings where the promulgation of the Ordinance was considered. The magistrate judge also relied on law enforcement data detailing police incident reports involving Camelot's business.

Camelot asserts that the City's evidence does not demonstrate that the Ordinance was aimed at preventing the secondary effects of SOBs. First, Camelot argues that the Ordinance's Preamble is aimed at regulating adult oriented speech. Camelot further argues that the Preamble fails to identify the problem at issue and does not specifically indicate that the Ordinance is aimed at eliminating the secondary effects of SOBs. We disagree. The Preamble reads as follows:

> It is the purpose of this Ordinance to regulate Adult Entertainment Establishments to promote the health, safety morals and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the concentration of Adult Entertainment Establishments within the City. The provisions of this Ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of the Ordinance to restrict or deny access by adults to sexually materials protected by the First Amendment or deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market.

The Preamble is clear that the purpose of the Ordinance was not aimed at infringing on sexually oriented speech. The minutes from one City Council meeting also state that the "intent [of the Ordinance] was not to prohibit the operation of adult entertainment establishments, but to provide

5

reasonable regulation and control." Camelot's interpretation of the Preamble as restricting sexually oriented expression is simply implausible. A reasonable understanding of the Ordinance is that it was enacted to establish regulations to combat the harmful secondary effects associated with SOBs, which would in turn, "promote the health, safety, morals, and general welfare of the citizens of the City."

Second, Camelot asserts that the City's supporting affidavits are not sufficient summary judgment evidence because they were drafted after the lawsuit was filed. In J&B Entertainment, Inc. v. City of Jackson, this Court noted that a City could meet its burden of introducing evidence to justify the challenged ordinance either by developing evidence of secondary effects prior to the enactment or *by adducing such evidence at trial*. 152 F.3d 362, 371 (5th Cir. 1998) (emphasis added). Camelot further asserts that the affidavits are hearsay because the studies and documents referenced in them were not attached. Camelot waived this argument by failing to object below to the admission of the affidavits. As the magistrate judge noted, Camelot never challenged the actual substance of the affidavits.

Notwithstanding Camelot's arguments, the affidavits of those intimately involved in the drafting and enactment process of the Ordinance are clear that the Ordinance was enacted out of concern about the adverse secondary effects of SOBs in the City and surrounding communities. For instance, Former City Manager Marion Thorpe stated that the Ordinance was proposed in response to reports of problems that neighboring City of Leon was experiencing with SOBs and the County's efforts to close several SOBs along Highway 10, east of the City. Mayor Wesley Becken, then City Councilman, stated that the City was concerned with the proximity of Randolph Air Force Base, specifically that "there is a long established outstanding relationship with the military and our city that is not to be tarnished if at all possible." Mayor Wesley Becken also stated that "there was a concern

6

with the type of clientele drawn to [SOBs] including the strong possibility of the introduction of crime activity to include narcotics, prostitution, etc." Then City Councilman Richard Crow stated that the City felt that the healthy economic development and property values would suffer as a result of SOBs moving into the City without proper regulation. City Councilman Richard Crow further stated that these concerns grew out of news reports of arson, drug activity, and prostitution occurring in a massage parlor located in Bexar County. Former City Attorney Robert Flake stated that he researched case law, contacted several area cities, and obtained several ordinances in preparation for drafting the Ordinance.

Third, Camelot contends that the minutes from the City Council meetings are devoid of any discussion of the secondary effects of SOBs. Although the minutes do not specifically discuss the secondary effects of SOBs, the affidavits make clear that the City Council members were aware of the adverse secondary effects of SOBs. Fourth, Camelot asserts that the police incident reports do not "advance the City's interest in combating adverse secondary effects." We disagree. The police incident reports highlight various adverse secondary effects associated with Camelot's business, i.e. public urination, threats to a police officer, assault, injury to dancer, and brandishing a weapon.

When viewed as a whole, the above-referenced evidence, demonstrates that the City had a substantial government interest in adopting the Ordinance.

IV.

7

Camelot argues that the magistrate judge improperly found that the Ordinance provided reasonable alternative avenues of communication for SOBs.[4] Despite Camelot's protestations, the record is clear that zoning is available for SOBs in the City. The City's affidavit of Michelle Mauldin ("Mauldin"), the City's Director of Engineering, along with a color coded marked map, shows that sites are available for SOBs in the Class 2 Medium Intensity Land Use District. In the City Council minutes, City Manager Thorpe noted that zoning is available for SOBs in the Class 2 district. The color coded map also identified ten available sites for Camelot in that district.

Camelot argues that the Mauldin affidavit was persuasively countered by the affidavit of John Fahle ("Fahle"), one of its attorneys, which stated that there were no permissible locations in the City for SOBs. Camelot asserts that the magistrate judge incorrectly excluded the Fahle affidavit as hearsay. Although Camelot waived this argument by failing to object below, the magistrate judge correctly ruled that the Fahle affidavit was hearsay. Moreover, Mauldin stated in a subsequent affidavit that she never told Fahle or any Camelot representative that there were no permissible locations in the City for SOBs.

V.

---

[4]The magistrate judge placed the burden on Camelot of proving that alternative avenues of communication exist. Camelot avers that the magistrate judge erred by placing the burden on it, instead of the City. The City concedes that it had the burden of proof, however the City contends that it met its burden of proof. As will be discussed infra, the City has proved that alternative avenues of communication remain available for SOBs, including Camelot, in the City.

8

We find that the City had a substantial government interest in regulating SOBs as a result of the adverse secondary effects of SOBs and that it provided SOBs reasonable alternative avenues of communication. The judgment of the magistrate judge is AFFIRMED.

AFFIRMED.