## WHITE RIVER AMUSEMENT PUB, INC., Plaintiff,

### v.

**TOWN OF HARTFORD, VERMONT; the Selectboard of Hartford, Vermont; Hunter Rieseberg, as the Town Manager of Hartford, Vermont; Todd Steadman, as Chairman, Selectboard of the Town of Hartford, Vermont; Leonard Berliner, Gayle Ottman, Ray Cerasoli, and Richard Ballou, as Members of the Selectboard, Town of Hartford, Vermont; and Joseph Estey, as Chief of Police of Hartford, Vermont, Defendants.**

No. 1:02–CV–320.

United States District Court, D. Vermont.

Dec. 15, 2005.

David Seth Putter, Putter & Edson, LLP, Montpelier, VT, H. Glenn Alberich, Burns & Levinson LLP, Boston, MA, Joseph J. Machera, Law Offices of Joseph J. Machera, Revere, MA, for Plaintiff.

Kevin John Coyle, Simpsonville, SC, and William Francis Ellis, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for Defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### (Papers 42, 58, and 78)

MURTHA, District Judge.

The Town of Hartford, Vermont, the Selectboard of Hartford, Vermont, and Hunter Rieseberg, Todd Steadman, Leonard Berliner, Gayle Ottman, Ray Cerasoli, Richard Ballou, and Joseph Estey, individually ("Defendants"), request a grant of summary judgment on all claims brought by Plaintiff, White River Amusement Pub, Inc. ("Plaintiff"), under Fed.R.Civ.P. 56. Plaintiff, in turn, requests that the Court grant summary judgment on its claims in their entirety against Defendants. For the reasons stated herein, the Defendants' motion is DENIED in part and GRANTED in part. Plaintiff's motion is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff began operating the White River Amusement Pub ("the WRAP"), located in downtown White River Junction within the Town of Hartford, Vermont in September 2001. The WRAP serves food and

beverages, and provides music and dance entertainment performed by women who are sometimes clothed, sometimes topless, and sometimes completely nude. Pl.'s Statement of Undisputed Facts (Paper 59) ¶ 3. At the time the WRAP commenced operation, the Town had no ordinance to prohibit the WRAP from providing nude dance entertainment.

In Spring 2002, at the request of the Selectboard, the Town's Attorney, Robert Manby, Jr., researched and prepared a draft of a public indecency ordinance. During the drafting process, Attorney Manby considered similar local ordinances adopted by other Vermont towns. Upon completing the draft and sending it to the Selectboard for review, Attorney Manby recommended that they adopt a resolution stating that they had considered the "secondary effects" of adult entertainment as part of the enactment process. Paper 59, Ex. R. Attorney Manby apparently based his recommendation on the fact that this Court, in upholding a similar ordinance in *SBC Enterprises, Inc. and Shawn B. Cliche v. City of South Burlington*, 892 F.Supp. 578 (D.Vt.1995), had taken into account whether the legislative body had considered the negative secondary effects of public nudity in passing the ordinance.

Despite this advice from Attorney Manby, the Selectboard did not adopt a statement describing any perceived negative secondary effects that the indecency ordinance was intended to address. During consideration and discussion of the ordinance at two meetings in April 2002, the Selectboard reviewed only the draft ordinance, two letters from Attorney Manby, and similar ordinances previously enacted in other Vermont towns. Paper 59 ¶ 12; Defs.' Objections to Pl.'s Statement of Undisputed Material Facts (Paper 65) ¶ 12. The Town Manager and some Selectboard members apparently also discussed poten-

tial negative secondary effects with constituents. Paper 65 ¶ 14.

After a brief public hearing on May 28, 2002 at which the Town Manager gave "an overview" of the ordinance, the Selectboard adopted the Town of Hartford Public Indecency Ordinance ("the Ordinance") by a unanimous vote. Paper 59 ¶¶ 7–9; Paper 65 ¶ 6. The Ordinance provides:

"Nudity" shall mean the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering (which fully opaque covering shall not be a facsimile designed to replicate or imitate the covered area), or the showing of the female breast with less than a fully opaque covering (which fully opaque covering shall not be a facsimile designed to replicate or imitate the covered area) of any portion of the nipple or the depiction of covered male genitals in a discernibly turgid state. A woman breastfeeding her child, irrespective of whether her breast is covered, shall not be considered in a state of nudity.

The Ordinance defines "Public Place" as "any location frequented by the public," including "business and commercial establishments, … night clubs, … [and] cabarets." The Ordinance also states, in pertinent part:

a. No person shall knowingly or intentionally in a public place:

1. engage in sexual intercourse;

2. appear in a state of nudity;

3. fondle his/her genitals;

4. fondle the genitals of another person;

5. fondle his/her breasts; or

6. fondle the breasts of another person.

b. No person who owns, leases, or controls property shall knowingly allow any person to engage in the conduct

described in subparagraph a. above at any time such property is open to the public.

Subsequent to enacting the Ordinance, the Town received studies documenting negative secondary effects of adult businesses, and also held a public hearing at which the Selectboard members articulated their rationale for enacting the Ordinance—to combat the negative secondary effects of public nudity. Paper 65 ¶ 14; Defs.' Reply Mem. of Law in Further Supp. of Joint Mot. for Summ. J. (Paper 61) at 6–7, Ex. E.

Plaintiff argues that the Ordinance violates its protections under the First, Fourteenth, and Fifth Amendments. In addition, Plaintiff claims Defendants' conduct violates 42 U.S.C. § 1983, as well as Chapter 1, Article 13 and Chapter 1, Article 7 of the Vermont Constitution. Finally, Plaintiff asserts that the individual Defendants cannot claim qualified, legislative, or statutory immunity.

Plaintiff cites for support the undisputed fact that the Town of Hartford did not personally conduct a study of potential negative secondary effects that nude entertainment might have upon the Hartford community, and that at no time during pre-enactment hearings and meetings did the Hartford Selectboard discuss possible negative secondary effects. Paper 59 ¶¶ 5–9, 12–16; Paper 65 ¶¶ 6–7.

Defendants, in turn, argue that the Ordinance meets constitutional standards under the First, Fourteenth, and Fifth Amendments, as well as under Chapter 1, Article 13 and Chapter 1, Article 7 of the Vermont Constitution. Finally, the individual Defendants assert that they are entitled to qualified, legislative, or statutory immunity.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins.*, 345 F.3d 154, 165 (2d Cir.2003). The burden is on the moving party to demonstrate there are no material facts genuinely in dispute. *See Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When ruling on a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir.2005).

## I. *Mootness*

■ As a preliminary matter, the Court must address the justiciability question. Defendants argue that the case is moot because Plaintiff no longer operates the WRAP due to a fire during the pendency of the current motions. Defs.' Feb. 2005 Mem. of Law in Supp. of Mot. for Summ. J. (Paper 79); Defs.' Feb. 2005 Local Rule 7.1(c) Statement of Undisputed Material Fact (Paper 80).

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *Michele Catanzano v. Brian J. Wing and Barbara A. Debuono*, 277 F.3d 99, 107 (2d Cir.2001) (both quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). The root concern is that, when the conduct at issue ceases such that "there is no reasonable expectation that the wrong will be repeated," then it becomes impossible for

the court to grant " 'any effectual relief whatever' to [the] prevailing party." *Pap's A.M.*, 529 U.S. at 287, 120 S.Ct. 1382 (quotations and citations omitted); *see also Fox*, 42 F.3d at 140.

Here, Plaintiff submitted an affidavit stating that it intends to "continue to provide the same dance entertainment ... when the WRAP reopens," and possibly at other locations as well. Affidavit of Daniel Garr (Paper 83) ¶¶ 10–11 (citing the WRAP's lease which is in effect until July 15, 2006). Plaintiff's claims, therefore, are not moot; there is a reasonable expectation that upon the WRAP's re-opening, the Town would enforce the Ordinance, subjecting Plaintiff to the same substantial harm. *See Pap's A.M.*, 529 U.S. at 287, 120 S.Ct. 1382 (holding that "simply closing [the nude dancing establishment] is not sufficient to render the case moot, however. Pap's is still incorporated under Pennsylvania law, and it could again decide to operate a nude dancing establishment in Erie"); *Clark v. City of Lakewood*, 259 F.3d 996, 1012 (9th Cir.2001) (holding that plaintiff still had "a legally cognizable interest in the outcome" of its case challenging an adult cabaret ordinance where plaintiff's license to operate cabarets had expired but he intended to reopen his business); *Calise Beauty Sch. v. Richard Riley, Sec'y of the U.S. Dep't of Educ.*, No. 6501, 1997 WL 630115, *5, 1997 U.S. Dist. LEXIS 15706, *13 (S.D.N.Y.1997) (Stein, J.) (holding that a challenge to an agency policy that would likely subject the litigants to the same dispute again was not moot); *Begins v. Philbrook*, 513 F.2d 19, 23 (2d Cir.1975) ("the [Vermont welfare] Regulation still stands and defendant clearly intends to enforce it against plaintiffs should the occasion demand.").

The case is not moot since the WRAP continues to face a threat of future harm when the Town enforces the Ordinance. Therefore, Defendants' motion for summary judgment on that ground is DENIED. Now to the merits.

## II. *Freedom of Expression*

■ Plaintiff claims that the nude dance entertainment provided at the WRAP is protected expression under the First Amendment. Being in a state of nudity is not an inherently expressive condition. The Supreme Court has consistently held, however, that nude dancing of the type at issue here is expressive conduct that falls within the outer ambit of the First Amendment's protection. *Pap's A.M.*, 529 U.S. at 289, 120 S.Ct. 1382; *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) ("nude dancing is not without its First Amendment protections"). Thus, municipal ordinances that regulate nude dancing are subject to constitutional scrutiny. *See, e.g., Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee County, Fla.*, 337 F.3d 1251, 1269 (11th Cir.2003) (citing *Pap's A.M.*, 529 U.S. at 289–90, 120 S.Ct. 1382); *see also SBC Enters., Inc.*, 892 F.Supp. at 581 (citing *Barnes*, 501 U.S. at 569, 111 S.Ct. 2456).

To determine what level of scrutiny applies to the ordinance at issue, the Court must determine whether Hartford's Ordinance is related to the suppression of expression. *Pap's A.M.*, 529 U.S. at 289, 120 S.Ct. 1382. "If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from *O'Brien* for evaluating restrictions on symbolic speech." *Id.* at 289, 120 S.Ct. 1382 (citing *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), articulating the test for evaluating government regulation of conduct involving both "speech" and "nonspeech" elements, in the context of draft

card burning). Because the Ordinance bans all nudity within Hartford and does not specifically target expressive nude dancing, it is a facially neutral ordinance, and therefore the Court will evaluate it under the four-factor test for expressive conduct set forth in *O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 862 (8th Cir.2003); *Heideman, et al. v. South Salt Lake City*, 348 F.3d 1182, 1197 (10th Cir.2003); *Peek–A–Boo Lounge*, 337 F.3d at 1269 (all applying *O'Brien* test to public nudity ordinances).

Under *O'Brien*, an ordinance is valid if (1) the government regulation is within the constitutional power of the government; (2) the regulation furthers an important or substantial government interest; (3) the government interest is unrelated to the suppression of free speech; and (4) the restriction is no greater than is essential to the furtherance of the government interest. *O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673.

### A. *The First and Fourth O'Brien Factors*

The Ordinance meets the first and fourth *O'Brien* factors. Regarding the first factor, there is no doubt that the Ordinance is within the government's lawful powers. *See Pap's A.M.*, 529 U.S. at 296, 120 S.Ct. 1382 (the city's "efforts to protect public health and safety are clearly within the city's police powers"); *Barnes*, 501 U.S. at 567, 111 S.Ct. 2456.

The fourth factor of the *O'Brien* test requires that any incidental restriction on alleged First Amendment freedoms be no greater than essential to further the government's interest. The plurality in *Pap's A.M.* concluded that an absolute ban on nudity meets the *O'Brien* test because "the requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message." *Pap's A.M.*, 529 U.S. at 301, 120 S.Ct. 1382. The same conclusion can be reached here, and therefore the Ordinance meets *O'Brien's* fourth factor.

### B. *The Second and Third O'Brien Factors*

The third *O'Brien* factor—whether the government interest is unrelated to the suppression of free expression—follows from the second—regarding whether the Ordinance's purpose furthers an important government interest. It appears that the third factor is satisfied here because the Selectboard has subsequently stated that its interest in passing the Ordinance was to prevent the secondary negative effects associated with nude adult entertainment, not merely to suppress erotic expressive speech. Mr. Steadman has stated that, as Chair of the Selectboard, "I put the ordinance on the agenda because of my desire to protect economic development opportunities within the Town," and at a September 9, 2002 public hearing, the Selectboard stated its rationale for enacting the Ordinance, based on the potential for negative secondary effects. Aff. of Todd Steadman (Paper 45) at ¶¶ 13–14; Paper 65 at ¶ 14.

It is the related second factor, however, that is problematic. *See, e.g., SOB, Inc.*, 317 F.3d at 862–63. Defendants assert that the Selectboard enacted the Ordinance to combat negative secondary effects. To satisfy the second *O'Brien* factor, however, the Town of Hartford must demonstrate that the Ordinance furthers the Town's substantial interest in preventing the secondary effects associated with adult entertainment. *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673; *see also Pap's A.M.*, 529 U.S. at 296–97, 120 S.Ct. 1382 (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). The precise issue is

the quality and quantum of evidence a government body must consider at the time of enactment to demonstrate it has a reasonable basis for believing the regulated activity creates negative secondary effects. Because the evidentiary standard continues to evolve, we address it in some depth. *See Pap's A.M.*, 529 U.S. at 311, 120 S.Ct. 1382 (Souter, J., concurring in part and dissenting in part) (noting that the Court has never precisely addressed how much evidence is required).

### 1. *The Applicable Standard*

The Supreme Court's secondary effects jurisprudence is riddled with a number of no-clear-majority decisions. *See Peek–A–Boo Lounge*, 337 F.3d at 1255–65 (comprehensively summarizing the Supreme Court's secondary effects jurisprudence). The current standard, however, for deciding whether an ordinance furthers the government's alleged interest in combating the negative secondary effects associated with sexually oriented speech in general, and nude dancing in particular, is described in *Renton* and utilized in *Barnes, Pap's A.M.*, and *Alameda Books*.

██ According to the standard first set out in *Renton,*

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant* to the problem that the city addresses.

*Renton*, 475 U.S. at 51–52, 106 S.Ct. 925 (emphasis added). The government need not produce actual proof that its remedy reduces secondary effects; the Supreme Court has held that such a requirement "would go too far in undermining our settled position that municipalities must be given a reasonable opportunity to experiment with solutions" to address the secondary effects of protected speech. *Alameda Books*, 535 U.S. at 433, 439, 122 S.Ct. 1728 (quoting *Renton*, 475 U.S. at 52, 106 S.Ct. 925).

██ A government, however, cannot "get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance." *Alameda Books*, 535 U.S. at 438, 122 S.Ct. 1728 (plurality opinion) (granting certiorari to clarify this standard);[1] *see also R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 409 (7th Cir.2004) (quoting Justice Kennedy's concurrence in *Alameda Books* that "a municipality must advance *some basis* to show that its regulation has the purpose and effect of suppressing undesirable secondary effects") (emphasis added). If plaintiffs succeed in casting doubt on a municipality's rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance. *Alameda Books*, 535 U.S. at 438–39, 122 S.Ct. 1728 (citing *Pap's A.M.*, 529 U.S. at 298, 120 S.Ct. 1382). *See Peek–A–Boo Lounge*, 337 F.3d at 1265 (reversing summary judgment granted to county because plaintiff cast doubt upon county's rationale for its public nudity ordinance, thus shifting the burden

**1.** *Alameda Books* addressed the standard in the context of a zoning ordinance. Although zoning and public nudity ordinances are evaluated under different tests—*Renton* and *O'Brien,* respectively—the standard discussed in *Alameda Books* applies to a similar prong in each test, regarding whether the ordinance "furthers" or "serves," respectively, the government's alleged interest in combating negative secondary effects. *See Peek–A–Boo Lounge,* 337 F.3d at 1264–65 (clarifying this distinction).

to county to supplement the record with supporting evidence); *SOB, Inc.*, 317 F.3d at 862–64 (8th Cir.2003) (holding that the county had sufficient basis for concluding that public indecency ordinance was needed to further governmental interest in combating secondary effects where the county gathered studies by other municipalities and evidence of adverse effects, including testimony by a former strip-club manager); *Flanigan's Enters., Inc. of Ga. v. Fulton County, Ga.*, 242 F.3d 976, 986 (11th Cir.2001) (finding it unreasonable for the county to rely on foreign studies concerning secondary effects when the county's own current data conclusively demonstrated that such effects were not found).

Finally, while the "reasonably believed to be relevant" evidentiary standard is not particularly demanding, neither the Supreme Court nor circuit courts have found it satisfied by a low level of justification. *See R.V.S.*, 361 F.3d at 411–12 (*Compare Alameda Books*, 535 U.S. at 425, 122 S.Ct. 1728, 152 L.Ed.2d 670) (city relied on study it conducted a number of years prior to enacting ordinance); *Renton*, 475 U.S. at 44, 106 S.Ct. 925, 89 L.Ed.2d 29 (planning committee conducted extensive studies and hearings); *G.M. Enters.*, 350 F.3d at 631 (town board collected 16 studies and consulted judicial opinions and police reports); *Ben's Bar*, 316 F.3d at 725 (village board relied on numerous judicial decisions, studies from 11 different cities, and findings in a report from the state's attorney general); *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir.2000) (city collected and reviewed studies and conducted legislative research); *DiMa Corp.*, 185 F.3d at 830–31 (town "minimally" met its evidentiary burden by relying on the factual record supporting the experience of another community as reported in a judicial opinion).

In short, the second *O'Brien* factor requires that Defendants demonstrate that the Selectboard, in enacting the Ordinance, relied upon evidence reasonably believed to be relevant to the problem of negative secondary effects, and the evidence fairly supports the Selectboard's rationale for the Ordinance.

■ Defendants assert that they do not have to provide such evidentiary support, in reliance upon this Court's earlier decision in *SBC Enterprises v. City of South Burlington*, 892 F.Supp. 578 (D.Vt.1995). In *SBC Enterprises*, Judge Gagliardi upheld South Burlington's public nudity ordinance, which is quite similar to the Ordinance at issue here, except that it makes explicit reference to consideration of secondary effects. *Id.* at 582 n. 3. After identifying the *O'Brien* standard, Judge Gagliardi reasoned that "this Court need not engage in an analysis of the Ordinance beyond reference to Justice Souter's opinion" in *Barnes*, since the regulations in *Barnes* and South Burlington were identical. *Id.* at 582, 111 S.Ct. 2456. Judge Gagliardi also noted that the municipality's interest in secondary effects need only be a current interest, and need not be articulated at the time of enactment, citing *Barnes*. *Id.*; *see also Barnes*, 501 U.S. at 584, 111 S.Ct. 2456 (holding that Indiana could reasonably rely on the findings and experiences of other similar localities in order to conclude that forbidding nude dancing furthered its interest in preventing secondary effects, in satisfaction of *O'Brien's* second factor).

Reliance on *SBC Enterprises*, however, is misplaced in light of more recent secondary effects jurisprudence. First, in *Pap's A.M.*, Justice Souter recanted his position in *Barnes*[2] upon which Judge Gagliardi relied in *SBC Enterprises*. Justice Souter explained in *Pap's A.M.* that

---

**2.** Because Justice Souter provided the narrowest grounds for the judgment in *Barnes*,

his concurrence constitutes the holding of the

[i]n several recent cases, we have confronted the need for factual justifications to satisfy intermediate scrutiny under the First Amendment.... Those cases do not identify with any specificity a particular quantum of evidence, nor do I seek to do so in this brief concurrence. What the cases do make plain, however, is that application of an intermediate scrutiny test to government's asserted rationale for regulation of expressive activity demands some factual justification to connect that rationale with the regulation in issue.

529 U.S. at 311, 120 S.Ct. 1382 (Souter, J., concurring in part and dissenting in part). He further stated that because the *Barnes* Court did not address evidentiary showings, "[t]o invoke Barnes, therefore, does not indicate that the issue of evidence has been addressed." *Id.* at 315, 120 S.Ct. 1382. Justice Souter noted that his partial dissent

> rests on a demand for an evidentiary basis that I failed to make when I concurred in *Barnes*. ... [A]fter many subsequent occasions to think further about the needs of the First Amendment, I have come to believe that a government must toe the mark more carefully than I first insisted.

*Id.* at 316, 120 S.Ct. 1382.

In another development since *SBC Enterprises*, the Supreme Court clarified *Renton's* requirement that a municipality act on evidence "reasonably believed to be relevant" to the problem of secondary effects does not mean "that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance." *Alameda Books*, 535 U.S. at 439, 122 S.Ct. 1728.

Finally, recent federal case law explicates the inference in *Renton* that it requires pre-enactment evidence.[3] *See Peek–A–Boo Lounge*, 337 F.3d at 1268 (noting that the majority of circuit courts interpret *Renton* to require at least some pre-enactment evidence) (citing *Hickerson v. City of New York*, 146 F.3d 99, 105 (2d Cir.1998) ("a barren legislative record will not suffice under the First Amendment") and *11126 Baltimore Blvd. v. Prince George's County*, 886 F.2d 1415, 1425 (4th Cir.1989) ("Clearly, trial testimony and 'supplemental' materials cannot sustain regulations where there is no evidence in the pre-enactment record.")).[4] The *Peek–A–Boo Lounge* Court additionally reasons that in *Alameda Books*, the Court resolved the argument that Los Angeles could not reasonably rely on post-enactment evidence "not by finding respondents' argument inapposite, as would be appropriate if *Renton* did not require pre-enactment evidence, but by noting that Los Angeles had,

Court in that case under the rule of *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), for interpreting fragmented Supreme Court decisions.

**3.** As quoted above at page 13, the *Renton* Court stated that "[t]he First Amendment does not require a city, *before enacting such an ordinance*, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses." 475 U.S. at 51–52, 106 S.Ct. 925 (emphasis added).

**4.** Defendants cite *BGHA v. City Universal City*, 340 F.3d 295, 298 (5th Cir.2003) for the proposition that municipalities may justify an ordinance either by pre- or post-enactment evidence. The *BGHA* Court cited as support, however, a case that cites to Justice Souter's re-canted position in *Barnes*. *Id.* at 299 (citing *J & B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 371 (5th Cir.1998)). Notably, the ordinances in both *BGHA* and *J & B Entm't* included preambles describing the municipalities' concern for negative secondary effects. *See BGHA*, 340 F.3d at 298; *J & B Entm't*, 152 F.3d at 365.

in fact relied on pre-enactment evidence." 337 F.3d at 1268 n. 17.

In conclusion, the second *O'Brien* factor requires a demonstration from the Selectboard that, at the time it enacted the Ordinance, it relied upon at least some evidence reasonably believed to be relevant to its interest in preventing negative secondary effects associated with nude adult entertainment, and that the evidence fairly supported its rationale for the Ordinance.

### 2. *Application of the Standard*

■ Before enacting the Ordinance, the Hartford Selectboard considered only (1) public indecency ordinances from the City of Rutland, City of South Burlington, and Essex Junction, (2) two letters from Town Attorney Manby, including his indication that this Court upheld a similar statute in *SBC Enterprises,* and (3) the Town Manager's "overview" of the Ordinance. Paper 59 ¶¶ 6–15; Paper 65 ¶¶ 6, 8, 12. Although some Selectboard members discussed negative secondary effects with constituents, the Defendants concede that they did not discuss secondary effects during the pre-enactment meetings and public hearing. Paper 65 ¶¶ 6, 8, 14. The Board did not undertake a study of potential secondary effects, nor consider other municipalities' studies until after enactment. Paper 65 ¶ 15. Despite specific advice from Attorney Manby, the Selectboard also did not adopt a resolution describing any perceived secondary effects that the Ordinance was intended to address. Not until September 2002 did the Selectboard publicly explain its rationale for the Ordinance. Paper 65 ¶ 14; Paper 61 at 6–7.

Plaintiff presented the following evidence in support of its motion for summary judgment: Defendants Steadman and Ottman testified under oath that they are not aware of any adverse secondary effects caused by the WRAP since its opening in September 2001. Paper 59 ¶¶ 20, 23, Exs. U, X. Mr. Steadman also testified that he is unaware of an increase in crime and a number of new businesses have opened in the direct vicinity of the WRAP and existing businesses have moved to the area in which the WRAP is located. Paper 59 ¶¶ 21, 22, Exs. V, W. Defendant Berliner added that the WRAP has not had a negative effect on commercial property rental and sales values. Paper 59 ¶ 24, Ex. Y. Police Chief Estey testified that he has written reports of criminal activity that can be attributed to the entertainment provided by the WRAP and a greater number of complaints and police attention were attributable to the pool hall that operated before the WRAP. Paper 59 at ¶ 25, Ex. AA. Finally, local business owners have testified the WRAP has not negatively affected their downtown businesses. Paper 59 ¶ 27, Ex. BB.

Because Plaintiff provided evidence rebutting the Defendants' rationale for enacting the ordinance, the burden shifts to the Defendants to add evidentiary support to their theory of negative secondary effects. *Alameda Books,* 535 U.S. at 438–439, 122 S.Ct. 1728. In response, Defendants rely upon a portion of Mr. Steadman's 2004 affidavit, stating that he was "concerned that permitting public nudity . . . created a potential for the creation of negative secondary effects," and he was "aware" that other cities and towns had studied the issue of "the creation of negative secondary effects." Paper 45, Ex. B. Mr. Steadman's statements, however, are the sort of post-enactment justification that courts have rejected. *See R.V.S.,* 361 F.3d at 405–06, 411 (finding it questionable that a modest amount of support, consisting of two legislators' personal observations and evidence of higher than average prostitution at a particular intersection, would be sufficient under the permissive guidelines); *Peek–A–Boo Lounge,* 337

F.3d at 1268 (invalidating ordinance in light of insufficient secondary effects evidence because the evidence required is "pre-enactment" evidence); *see also 11126 Baltimore Blvd.,* 886 F.2d at 1425 ("Clearly, trial testimony and 'supplemental' materials cannot sustain regulations where there is no evidence in the pre-enactment record.").

Defendants additionally rely upon Attorney Manby's letter alerting them to the decision in *SBC Enterprises,* upholding a similar ordinance. Paper 45 ¶ 12. The *Peek–A–Boo Lounge* court, however, noted that such a passing reference to a judicial opinion is insufficient to satisfy the government's evidentiary burden. 337 F.3d at 1267. Moreover, there is no evidence the Selectboard members read *SBC Enterprises* or other judicial opinions. *See DiMa Corp. v. Town of Hallie,* 185 F.3d 823, 830–31 (7th Cir.1999) (town "minimally" met its evidentiary burden by relying on the factual record supporting the experience of another community as reported in a judicial opinion).

Defendants also cite for support meeting minutes showing that the Town Manager gave "an overview" of the draft ordinance to the Selectboard before enactment. Paper 65 ¶¶ 6, 8. The court in *Gazarkiewicz v. Town of Kingsford Heights, Ind.,* 359 F.3d 933, 946 (7th Cir.2004), gave town meeting minutes substantial weight; "they are contemporaneous, official notations regarding council action ... [and] they are more reliable than post hoc justifications given by the council members in deposition testimony once they are aware they are being sued." The minutes of meetings on April 30, 2002 and May 28, 2002 fail to indicate that the Selectboard considered secondary negative effects during their deliberations.

Finally, Defendants emphasize the fact that several months after enacting the Ordinance, the Selectboard held a public hearing on the Ordinance at which they articulated their rationale for enactment, and also received multiple studies documenting the negative secondary effects of adult business—although Defendants make no effort to relate the studies to the potential for secondary effects in Hartford. Paper 45 ¶¶ 4–5; Paper 61 at 6–7, Ex. E. Contrary to Defendants' arguments, however, case law suggests that they must demonstrate they relied on at least some pre-enactment evidence to support their rationale for enacting the Ordinance to combat negative effects. *See supra* at p. 426. In fact, Defendants' pre-enactment evidence of its consideration of secondary effects falls short of that proffered in other cases in which there were findings that *O'Brien' s* second factor had been satisfied. *See R.V.S.,* 361 F.3d at 411–12 (summarizing cases with higher levels of pre-enactment evidence); *Center for Fair Pub. Policy v. Maricopa County,* 336 F.3d 1153, 1166–68 (9th Cir.2003) (holding that although the "pre-enactment record is a slim one" consisting of letters documenting problems associated with sexually oriented businesses and a "fact sheet" citing fourteen studies from other locales with secondary effects associated with adult entertainment, the record was sufficient); *Peek–A–Boo Lounge,* 337 F.3d at 1268 (finding the county had satisfied its pre-enactment burden by showing it had relied on two reports regarding secondary effects but that challengers had cast doubt on the "speculative," "outdated" studies). Defendants' post-enactment evidence of its rationale does not make up for its failure to rely on pre-enactment evidence that "fairly supports the municipality's rationale." *Alameda Books,* 535 U.S. at 438, 122 S.Ct. 1728.

As in *Alameda Books,* this Court acknowledges that "courts should not be in the business of second-guessing fact-bound empirical assessments of city planners."

*Alameda Books,* 535 U.S. at 451, 122 S.Ct. 1728. The purpose of the evidentiary standard clarified in *Alameda Books,* however, is to require municipalities to demonstrate reasonable reliance on some evidence supporting their concern for the secondary effects. *R.V.S.,* 361 F.3d at 409 (quoting Justice Kennedy's concurrence in *Alameda Books* that "a municipality must advance some basis to show that its regulation has the purpose and effect of suppressing undesirable secondary effects"); *see also Hickerson,* 146 F.3d at 105 ("a barren legislative record will not suffice under the First Amendment").

In conclusion, Hartford's Public Indecency Ordinance fails to meet the second part of the *O'Brien* test because the Town has not shown that it furthers the substantial government interest of preventing the negative secondary effects associated with nude adult entertainment. Because the Hartford Ordinance does not satisfy the second part of the *O'Brien* test, the Ordinance violates Plaintiff's First Amendment right to free expression, and is therefore unconstitutional.

### III. *Prior Restraint*

Plaintiff alleges the Ordinance constitutes a prior restraint on its right to free speech. Plaintiff's challenge does not qualify under the specialized exception for "prior restraints on speech" because it does not involve a permitting or licensing scheme or other prior review but instead an after-the-fact enforcement. *United States v. Frandsen,* 212 F.3d 1231, 1236–37 (2000) (defining prior restraint as "when the government can deny access to a forum for expression before the expression occurs") (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). Therefore, the Hartford Public Indecency Ordinance does not constitute an impermissible prior restraint on Plaintiff's right to free expression.

Plaintiff's prior restraint claim is dismissed.

### IV. *Equal Protection*

Plaintiff alleges the Hartford Public Indecency Ordinance is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. "For a case to be deemed justiciable under Article III, it must be ripe." *Marchi v. Bd. of Coop. Educ. Services,* 173 F.3d 469, 478 (2d Cir. 1999). The injury or threat to the Plaintiff must be both "real and immediate," and not "conjectural." *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Although the Ordinance has been in effect since May 28, 2002, the Town has not yet enforced it against the WRAP. To this end, the Plaintiff has failed to prove it was singled out for discriminatory treatment by the police. *See Reilly v. Doyle,* 483 F.2d 123, 128 (2d Cir.1973). Because Plaintiff is unable to show an injury in fact, its equal protection claim is not ripe for adjudication and is dismissed.

### V. *Regulatory Taking*

Plaintiff alleges the mere enactment of the Ordinance has deprived the WRAP of all economically viable uses of its property. Anything less than a complete elimination of value may still be considered a regulatory taking by taking into account the Ordinance's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectation, and the character of the government action. *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). However, only if and when the Ordinance is implemented could there arguably be any change in Plaintiff's viable economical use. *Cranley v. Nat'l Life Ins. Co. of Vt.,* 144 F.Supp.2d 291, 302 (D.Vt.2001). Even assuming the Ordinance had been enforced,

Plaintiff's claim for an unconstitutional taking still fails because Plaintiff retains a "full 'bundle' of property rights;" the destruction of one "strand" of the "bundle", nude dancing, is not a taking. *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (quoting *Andrus v. Allard*, 444 U.S. 51, 66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979)). Therefore, Plaintiff's claim of an unconstitutional taking pursuant to the Fifth Amendment of the Constitution is dismissed.[5]

## VI. *Vermont Constitution*

■ The U.S. Constitution is not the only foundation of Plaintiff's claims; he also cites the guarantees of the Vermont Constitution, specifically Chapter I, Article 7, the Common Benefits Clause, and Chapter I, Article 13, recognizing the right to freedom of speech.

The Vermont Supreme Court has suggested that "the right of free speech guaranteed under Chapter I, Article 13 is coextensive with the First Amendment," although it has reserved final judgment on the issue. *State v. Read*, 680 A.2d 944, 951 (Vt.1996) (citing *Shields v. Gerhart*, 163 Vt. 219, 658 A.2d 924, 929 (1995) and *In re Morrissey*, 149 Vt. 1, 538 A.2d 678, 689 (1987)). Because the Vermont Supreme Court has not yet determined if Article 13 provides greater protection than the First Amendment, and because the Court found the Hartford Public Indecency Ordinance unconstitutional under the U.S. Constitution, the Court finds the Ordinance unconstitutional under Article 13.

## VII. *Immunity*

Plaintiff concedes its state law claims are barred against Individual Defendants because Vermont law grants immunity to all appointed or elected municipal officials. *See* Paper 51 at 9–10; 24 V.S.A. § 901(a) (2004). Therefore, this Court will consider only the federal law claims against the Individual Defendants.

As to all claims, a subclass of the Individual Defendants, consisting of Chairman Todd Steadman and Town Selectboard members Leonard Berliner, Gayle Ottman, Ray Cerasoli, and Richard Ballou ("Legislative Defendants"), argues that all claims are barred by either the doctrine of qualified immunity or legislative immunity.[6] The remaining two defendants, Hunter Rieseberg, as Town Manager, and Chief of Police Joseph Estey, were not personally involved in the enactment of the Ordinance at issue in this case, and request summary judgment on all of Plaintiff's civil rights claims against them.

■ Local legislators are entitled to absolute immunity from civil liability under Section 1983 for their legislative activities. *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); *Berlickij v. Town of Castleton*, 248 F.Supp.2d 335, 342 (D.Vt.2003). This "immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at 54, 118 S.Ct. 966 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). The Town of Hartford Selectboard is the legislative body of the town. *See* 24 V.S.A. § 2001 (2004). Local legislators are entitled to absolute immunity from federal damages

---

**5.** The fact that Plaintiff no longer operates the WRAP due to the fire during the pendency of the current motions does not affect this result.

**6.** Municipalities do not enjoy either absolute or qualified-immunity from suit under Section

1983. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

liability for the activity of legislating. *Berlickij*, 248 F.Supp.2d at 342. They are also entitled to absolute liability from state damages liability. *Id.* at 343; *Levinsky v. Diamond*, 151 Vt. 178, 559 A.2d 1073, 1079 (1989), *overruled on other grounds by Muzzy v. State*, 155 Vt. 279, 583 A.2d 82 (1990). The test for determining whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 55, 118 S.Ct. 966. The claim of an unworthy purpose is legally irrelevant and does not destroy the privilege. *Id.*

All of Plaintiff's damages claims arise from the Town of Hartford's enactment of the Public Indecency Ordinance, effectuated by the Legislative Defendants. The Selectboard held a public hearing about the Ordinance, voted upon and enacted the Ordinance. The Legislative Defendants' actions bear the essence of traditional legislative activity and "reflected a discretionary, policymaking decision implicating the ... priorities of the town." *Bogan*, 523 U.S. at 55–56, 118 S.Ct. 966. Legislative immunity must be afforded to the Legislative Defendants because their enactment of the Public Indecency Ordinance was a purely legislative function. Therefore, summary judgment must be GRANTED in favor of the Legislative Defendants on all of Plaintiff's damages claims against them. However, the Legislative Defendants are not immune from the injunctive and declaratory relief sought by the WRAP, and therefore summary judgment is DENIED in favor of the Plaintiffs with respect to injunctive and declaratory relief.

Because the Legislative Defendants qualify for legislative immunity, the Court does not have to reach the question of qualified immunity for them.

The remaining Defendants, Town Manager Rieseberg and Chief of Police Estey, are both executive municipal officers and have no legislative powers or duties. *See*

24 V.S.A. §§ 1235–38 (town manager); 24 V.S.A. § 1931(b) (municipal police chief). Therefore, Defendants Rieseberg and Estey were not personally involved in the Ordinance's enactment. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Because this Court finds that the Ordinance violates Plaintiff's First Amendment right to free expression, Defendants Rieseberg and Estey will not have the opportunity to enforce the Ordinance and, therefore, cannot become personally involved in any constitutional deprivation pursuant to Section 1983. Defendants Rieseberg and Estey's motion for summary judgment is GRANTED with respect to any damages claim. The injunctive and declaratory relief given by this Court will be enforceable against Defendants Rieseberg and Estey; therefore, their motion for summary judgment is DENIED with respect to all injunctive and declaratory relief.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment on the grounds of mootness is DENIED. Plaintiff's motion for summary judgment is GRANTED to the extent this Court finds the Hartford Public Indecency Ordinance violates Plaintiff's First Amendment right to free expression. Plaintiff's motion for summary judgment is DENIED with respect to Plaintiff's Equal Protection, Regulatory Taking, and all Vermont Constitutional claims. Defendants' motion for summary judgment is DENIED to the extent it requests a finding of Constitutionality of the Ordinance. The Individual Defendants' motion for summary judgment is GRANTED with respect to all damages

claims, and is DENIED with respect to all injunctive and declaratory relief.

SO ORDERED.